25, 1963 and 1964, County of Rockland v. Triborough Bridge and Tunnel. Good morning, Your Honors. I'm going to please the Court. My name is Matthew Parisi for the appellants. This case, in our view, should not have been dismissed at the pleading stage. The complaint plausibly alleges three constitutional defects in the central business tolling program. First, the program creates an irrational classification between drivers who enter the CBD and drivers who originate within it. Second, the monetary charge is designed to deter lawful conduct and therefore raises eighth amendment concerns. I have a preliminary question about whether what this was was sufficiently a tax so that the Tax Injunction Act and the comity about not getting involved in state taxes deprives us of jurisdiction. Now, the district court acted as if it had jurisdiction, but I don't know if we have jurisdiction at all, given that federal courts are supposed to stay out of state taxing. And this raised a considerable amount of revenue. So it looks like a tax to me. And if it is a tax, we're out of it. I agree, Your Honor. The complaint alleges that the charge functions as a tax rather than a regulatory fee. The key distinction between taxes and fees is how the revenue is used. User fees compensate the government for providing a specific service to the payer. Taxes fund the broader public programs. Here the statute directs that the revenues be used for broad capital projects across the MTA system, including subway improvements, commuter rail infrastructure, accessibility projects and network expansion. Those expenditures benefit the regional transportation system as a whole, not the particular streets used by the drivers entering the CBD, which brings into play the integrated transportation system theory in that argument. But so you're saying this is a tax? Does that mean that you agree with Judge Calabresi that there's a jurisdictional problem? Well, that this court should be the district court, I believe, can hear this issue, but it should at least determine whether it's a tax or a toll. But if it determines that it's a tax, which you've just argued that it is, is Judge Calabresi right that the federal court then does not have jurisdiction, that we should abstain because this is a state and local taxation question? Well, then that determination should be made before it could go back, I would think. So, yes. And I think there needs to be discovery to get to that. If we held that, we presumably would vacate and remand the dismissal of the merits, remand and tell the district court to dismiss as well, then you would have to go to state court and argue your federal claims in a state court, which is what happens normally if it is a tax issue. Yes. So, yes, that is our, to answer your question, yes, that is our position that this should be considered a tax, not a toll. Now, if that is your position, let me put the next thing. When a jurisdiction is not a tax, it is not a toll. When a jurisdictional issue is just statutory, we are able to assume jurisdiction arguendo if we agree with the same result. That is, this isn't an issue of constitutional standing, which Justice Scalia said must be decided. It is an issue where we could assume jurisdiction arguendo and look at the merits, and then if we decide that it is a tax, then we can assume jurisdiction arguendo and then say that the merits would come out the same way, so that is the way it is. I agree. So my question is, why shouldn't we, given that the district court had done that, do that, but only if we disagree with you on the merits? I think it is a timing issue as to when to do all those things. So if you disagree with us as to the merits, I presume, yes, you could do that, assuming arguendo that there was jurisdiction. We submit that you shouldn't, that this should be resolved on the merits. It shouldn't be resolved on a motion to dismiss stage by either here or basically in State court as well. There should be a decision, and get at least facts, get discovery, and get to the issues before we come to a conclusion on this important issue. I'm just curious about the purpose for which the revenue is raised. Is that fair? Yes, it is our argument. And so here, the purpose of the toll is to fund MTA improvement initiatives, right, for the subways and buses and the like? That is what they have stated they have done with the revenue.  So why is that? That seems fairly specific. I mean, it is broad in a sense. It is the MTA transit system. But it seems not like a general tax. So why would we call that a tax as opposed to a fee? Because it is imposed not for use of a particular facility, but simply for entering a geographic area of city streets. You are talking about who it is assessed on, and I thought what we were just talking about was the purpose of the revenue. And it is also used to fund capital projects across the entire region. For one example, the toll is on cars. Yes, but not related to, so the other cases involve bridges and of those nature where the funding is used to fund bridges. There is something much more closely related to this. This is charging drivers to fix subway tolls, or subway systems, and other things. So to allow, to charge one person for something, not for their use of the facility, but for a general purpose we submit is too attenuated a relationship to be considered. The fees go to facilitating travel in and out of Manhattan, right, because you can define this lots of ways. And you are saying, well, the driver's fees are used to fix the subway. That is one way of thinking about it, but the more people who ride the subway, the fewer people are on the road, so the drivers have less traffic, right? It is not like this fee is going to fund public schools, right? This is, it is, the question of generality is a matter of degree, right? This is going back into getting people in and out of Manhattan. You are going to question how wide, how separate, is too separate to pass constitutional muster. But why can't the tax be sufficiently specific, a gas tax, in order to get people in and out of Manhattan? To make the roads better is quite specific, but is clearly a tax. So, you know, generality speaks to it, but doesn't necessarily answer the question. It does, and I feel we submit that it is too attenuated in this case, certainly to do it on a motion to dismiss. We have alleged a plausible argument in the complaint that there is this issue, and to dismiss that without any explanation of what the funds are going to be used for, because that is not really clear. It certainly isn't clear from the complaint, or from the public pronouncer of the MTA prior to instituting this tax, that we believe we should have an opportunity to explore that issue as well. Thank you. Good morning. May it please the Court. I'm David Newhouse, county executive. It's our position that our complaint was properly pled, and that the motion to dismiss should not have been dismissed. And just picking up on that last argument about the purpose of this toll, and the specificness of it, in 1701, as far as the purpose of the toll, it says that the purpose of the toll is to show that ongoing failure of MTA infrastructure have negative impact on the health, safety, and livelihood of commuters, tourists, resident New Yorkers, and business and commerce. So really, by its own, by the own statute, the way it was created, it was created for a very general purpose. And, again, that brings it back to the question of the purpose of the toll. It brings it back to our argument that it is a tax. As I understand it, one of the rationales is that the tolls that are collected will be used to improve MTA buses and subways, which in turn will increase ridership on those transit options and reduce traffic in the central business district, which then will adhere to the benefit of drivers, your constituency coming in to Manhattan. Why is that not a sufficient nexus between the toll that's charged and the use to which the revenue is put? Because the user, which means the motorist, is not getting any direct benefit. Reduce traffic. I think that's the argument, is that improvements in the MTA system will reduce traffic. I mean, the toll itself will reduce traffic, right? That sort of seems to be one of the objectives. Well, that's in theory, and I know, again, this is outside of the record, but it recently came out that the MTA received more money than anticipated for this toll. Well, you've been adamant that we shouldn't consider things outside the scope of the SECO there. But, again, that just goes to the argument that it was premature to dismiss this on a motion to dismiss. There's so many of these issues that have to be fleshed out, and, again, it was plausibly implied that at least there's a basis for this to go on to discovery and not be dismissed as a motion to dismiss. Without any discovery, and summarily in that respect. And just moving on to our other arguments, that it's also a breach of the right to travel. And... There's no interstate travel claim here, right? This is strictly intra? Correct. Yeah, we concede the point that it has no effect on interstate commerce. But the other two prongs, north-northwest, we believe have been met. And, again, those two prongs are the toll has to be based on a fair approximation of the use of the facilities. Can you cite me a single case where we have suggested that the right to travel has been violated when you charge tolls to people even though they don't have an alternative way of traveling? I mean, you know, we charge tolls all the time, and there are people who don't have other ways. Now, one would think that there would be hundreds of cases saying that this violates the right to travel, but I haven't found a single one. But this is such a unique toll. The question of whether it's unique doesn't matter in terms of the right to travel. The right to travel is whether, when you charge a toll and some people have no other way, you're infringing their right to travel. And it doesn't matter if it's a toll of this sort or a toll of that sort. It has the same effect on travel. The county of Lawrence, we're in a transit desert. We have no direct route into Manhattan. For some of our commuters, we have work hours, nurses, police officers. They can't rely on the mass transit. They have to use this toll. Well, then there are people all over Connecticut who have no way of getting anywhere except by highways which have tolls, and those tolls make them pay. Does that interfere with their right to travel? Well, it makes them pay. Is that a constitutional level? I haven't seen anybody even argue it. Again, I have to concede that, no, there's no case that specific, but again, this is such a unique toll that... I mean, it would be different if you had a dormant commerce clause argument that this was unfavorable, but that argument isn't really made out because this applies to the people within the state as well. Do you see my problem? Yes, I understand the issues, and this is, again, comes back to this such as a unique program that, again, it has to be fleshed out in our position and not summarily dismissed with a motion to dismiss. And with that, I'll rest. Good morning, Your Honors. Brandon Trice for the Defendant Appellees in this case. I'll start with the right to travel. As we just heard, it sounds like there's no question, and it was conceded below, that the strict scrutiny test does not apply, and with respect to the Northwest Airlines test, I believe that counsel has conceded that there is no discrimination against interstate commerce. That's the third factor. As Judge Seibel noted below, and citing this Court's decision in Sullivan, that third factor is a threshold inquiry where it's satisfied it's more likely that the law will pass constitutional scrutiny under the Northwest Airlines test for the right to travel claim. With respect to the first and second factors, beginning with the first factor of the fair approximation of use of the facilities, as this Court has explained in Sullivan, this factor requires only that the tolls reflect, quote, rational distinctions among different classes of motorists so that each user on the whole pays some approximation of his or her fair share. Is that something we can reasonably determine at the motion to dismiss stage versus discovery? I mean, your colleagues on the other side are saying these are things that require more facts. I also said the same thing for the sort of excessiveness question. How are those things that are appropriate for resolution on the face of the complaint? Yes, Judge. It's a great question. I think, first of all, we're all following Iqbal and Twombly. There's no special exception to right to travel claims or anything else for Iqbal and Twombly. So we don't put it past a potential plaintiff being able to plead, for instance, that contrary to the legislative directive in findings here, there is an obvious benefit in reduced congestion or that there is an integrated transportation system, as this Court has found back in 1979 in the Auto Club decision. But that has not been pled here. With respect to the motion to dismiss in particular, Judge Miriam, we would direct the Court to the Auto Club decision I just mentioned, where the Port Authority network was found to be an integrated transportation system. And that was a motion to dismiss, at least in part. So I do think that that's instructive. We would also point the Court to the Weisshaus decision in 2020, where the MTA's transportation system was found to be an integrated transportation system on a motion to dismiss, and that was reiterating effectively what had been held multiple times in the past, including in, I believe, the Janus case with the Verrazano Bridge. Do we have to, I mean, assuming that we have a question about whether this is a tax or not, and assuming that we decide, arguendo, that we have jurisdiction and then reach the merits, which we can do because this is just statutory, do we have to decide whether this is a valid New York tax or not, or can we leave that aside to a separate trial in state courts? It's a very good question, Judge. I would submit this is a New York tax. It should be determined under New York law. If, for purposes of the Tax Injunction Act, the Court is going to look to the federal court three-part test in James, that's fine. I don't know that the Court can make a declaration, which I believe is what they say in their footnote as an alternative, that this is a tax. I don't think that the Tax Injunction Act can be back-ended in that way. If courts don't have the authority to direct state courts as to whether something is a tax or not, it shouldn't be able to do that through a declaratory judgment action either. With respect to the question of whether this is a tax under New York law, we would point the Court to the Cary Transportation v. TBTA decision, and that's the New York Court of Appeals in 1976. And in that case, as the Court may be aware, the TBTA was challenged for charging higher tolls or fees to special-purpose bus operators as compared to general-purpose bus operators. And the Court had no problem effectively saying, this is not a tax, this is a toll. Further, this is something that, pursuant to the state statute — Yeah, but my question is, do we have to decide such questions, or can we decide the case, say, for you on all of the federal questions that are raised, and if there were some state question, leave it to them and to the state? I believe the Court can do that, Judge. But just to close the thought on Cary, in that case, the Court looked back to — since 1968, the New York legislature has effectively said, look, there's way too much vehicular traffic, there's not a functioning mass transit system, we need to figure this out. And they have created, as Judge Park noted, a system that provides for the surplus of TBTA, which is essentially the bridges and tunnels that the MTA owns, to take the vehicular tolls and use those surpluses for the remainder of the system. This is, as Judge Calabresi said, it's raised $550 million in the first year. It was expected to raise $500 million. That's a substantial sum. Candidly, the sum of the TBTA and the MTA is larger than that. That doesn't render it a tax. In fact, it's been a long time. But what's the key for determining whether it's a fee or a tax? Is it — it's not the amount. I mean, is it that it goes to the MTA as opposed to the general FISC? Is it that it's earmarked for certain transit subway bus improvements or something else? I'm trying to get a handle on how to look at this. Yes, Judge. So under the state court rule, under the New York State rule, it would generally look to the fact — it's effectively a spectrum, but it would look to the fact that this is — is this something that's exacted by the legislature on all citizens for the general revenue fund purposes? Or is it more like something that an agency is exacting on — Clearly not that. I mean, this is clearly something that is at least being presented as a fee through a toll. So that makes it seem unlike a gas tax. Yes. I was actually going to go there next, Judge Park. I believe that the gas tax is actually — I don't have all the particulars of what a gas tax necessarily is doing, but my expectation is that it's a gas tax on all drivers throughout the state. So it's generally imposed. It's imposed by the legislature as opposed by, here, the TBTA, pursuant to legislative directive, but the TBTA determined and implemented and is the one who's collecting these fees. And it's only on those who are subject to its regulatory jurisdiction. So it's only ones who come within the CBD, which is within the mass transportation system of the MTA that you are charged. It's not general drivers throughout New York, certainly. So I think under the — I'm sorry, Judge. Sorry. Go ahead. So I believe under the federal court's three-part test as well in James, which looks to these three factors, who is it imposed upon? Most importantly, where is the money going? And this, I should note, under the statute, it's $15 billion to be raised for the MTA's 2020 to 2024 capital program, which is for mass transit purposes over the Long Island Railroad, Metro North, and the subway system. That's in a lockbox, and it can't be used for anything else. But my question is a slightly different one. If there is some possible issue about whether this is a tax or not, isn't it more desirable, since we can get to the merits anyway, arguendo, not to decide that issue, which gets us into a fairly complicated, almost constitutional question of, now, do you know, of what we interfere in states, not constitution, but federalism, but simply assume arguendo and then reach for merits, which we can do without making statements which might prove to be difficult in some other case in the future? Yes, Judge, I think that is the appropriate approach to take here, certainly for federalism concerns, given the Kerry case that I cited before, given the legislative structure. So you not only have the Court of Appeals effectively saying that something like this is not a tax with respect to the TBTA, but the legislature saying this is how we want this particular regulatory agency to be funded. That makes it seem very much like a tax to us, and we do think that whether it's declaratory, injunctive certainly, or anything else, the federal courts really ought not be putting a thumb on the scale with respect to the New York courts, which should have the right to determine this for themselves. Switching over to the integrated transportation system theory, how broad is that? It seems potentially strikingly broad to me, and I guess that's a concern I have, that if, you know, something that affects the flow of traffic, it's almost like the butterfly effect, everything affects traffic, and so, you know, an improvement to a bus in Queens lets you charge money to a driver coming through the Holland Tunnel. That's pretty tenuous. Well, I do, I think there are two factors that really go to help put some cabining on this. One is we're in New York City, of course, which is 8 million residents. It's the largest, it's the most integrated mass transit city in the country. Two is the fact that, so it's just a matter of even taking judicial notice of the layout, where are the tunnels, where are the bridges, where are the subways. You can see that there's a very clear interrelation there. Two is that there is, again, there's the legislative mandate, and that existed both for the Port Authority, which was relevant in the Auto Club case, Can I pause for a second? The interrelation is because of the reduction in traffic, because a better bus means more people ride it, and that reduces the number of Ubers on the streets or whatever. It's effectively what's been called a spillover effect. That's certainly relevant. So, you know, it's something that I think the city and the state have seen over the last five decades is that when there is traffic, for instance, on a newly built TBTA bridge, they think it's going to reduce traffic. In fact, that just keeps the traffic in the cars, and then people aren't using the mass transit. It all has an interacting effect. I think the Janus decision is especially relevant here. That's the case where Verrazano Bridge residents were charged basically a 50% discount off of what non-residents were charged to cross the bridge, and they effectively said, hey, why are you taking into account, we're crossing Staten Island into Brooklyn, you know, through the Verrazano Bridge, why are you taking into account things like far uptown? And the court said, look, that's sufficiently, given the statutory directive of what the MTA is supposed to do, given the fact that the legislature said take this money and use it for these particular purposes, and the just established spillover effect, that is sufficient, even if it looks like a tenuous connection. One final point. I think I'm over, but... Go ahead. Okay. One final point we would just note is that I do think that Judge Seibel was correct with respect to the benefit analysis in terms of saying, I don't really think she looked at the integrated transportation system for that. She just looked at the basic fact, as you said, Judge Park, that cars are going to see reduced traffic. In fact, the MTA just put out its one-year report on the program, and it's 11% reduced cars coming into the CBD. So that's a benefit, and that's something that people get, regardless of whether there's an integrated transportation network. To take a hypothetical, if I'm driving from Pennsylvania or Delaware, I'm not going to argue that I'm anywhere close to the integrated transportation network, but I'm still seeing a benefit when I drive into... Would you decide on that ground alone rather than relying on this theory? We would submit it. And it's not even judicial notice, I think, of what the effect has been, but more just, I don't know, econ 101, supply and demand, price goes up, demand goes down. Yes. We think that's the fair plausible inference from the allegations that they have made and that it's ground alone to decide the case. Thank you. Thank you. Thank you, counsel. We'll hear about it. Thank you, Your Honor. There was a lot of talk before the lower court and from the MTA side and then even here today about what the program would do. It would reduce congestion, reduce pollution, benefit suburban drivers, promote administrative efficiency, all of these. Those assertions were drawn from program reports and materials cited by the MTA. It's our position that the case was dismissed on the MTA's facts, not on the complaint as is required under Rule 12b-6. With respect to the integrated transportation system theory... What about the comment I just had with your friend that just the pricing itself, the toll itself will have the effect of reducing traffic? Why is that not enough? Well, let's see if it does. I drove in today. It took some time, right? We're not going outside the complaint, but that hasn't been determined yet because there has been no opportunity for any discovery. It's just the MTA says, oh, we'll reduce congestion. So then it passes constitutional muster. Our position is that it doesn't pass constitutional muster, certainly at a Rule 12b-6 stage. Let's hypothesize that it does reduce traffic. Is that a sufficient benefit for the drivers who are paying the toll to create the nexus? To create the nexus? Well, for the ITS, no. It's not connected to their use of a facility. But why isn't it enough for a statute or something to be passed because the legislature or whoever does that believes it will have a certain effect, which is beneficial? Why do you have to, before you pass a statute, prove that it will have that effect? If that were so, most statutes couldn't be passed. We don't know ahead of time whether a tariff will have a good effect or a bad effect or something. They pass it because they believe it will have it. So I would say the Constitution is what would prevent that from happening. And there should be a The Constitution requires us to show that something will have a good effect before you pass it? That's remarkable. No, but it requires, it allows someone who is aggrieved, who has an issue with it, a constitution with it, to raise that issue with the court and have that determined on the merits. And here it wasn't determined on the merits. It was determined at Rule 12b-6 motion. Now, if after discovery it turns out that's all correct and it does pass constitutional muster, then so be it. Is discovery the intent and desire to achieve an effect or the actual effect when we're evaluating whether the constitutional standard has been met? Is it enough for the government to believe and to articulate a rational basis, or does the government have to prove, whichever agency or whatever government entity, have to prove, as Judge Calabresi is asking, that it will or did have that effect? Okay. Isn't it sufficient to say there's a basis for us to believe it will have that effect? Well, we're challenging the basis for them to believe that as well. Well, you know, I think it's different if the standard is rational, intermediate, or even more. But where it's just rational, isn't it enough for the government to have that belief? If it is something that instead is up to a higher standard, there may be something. But otherwise, you know, almost every law would fall. Okay. Well, it would require an argument before it took effect. We're submitting that doesn't pass even that rational standard, and our briefs have provided that as well. Thank you. Okay. Thank you. Thank you. Thank you. Just very briefly, just picking up on that rationale argument that we just went over, I mean, those are basically the two prongs of the Northwest Airlines standards. And, again, it's our position that the toll is not based on a fair approximation of the use of the facilities, and that, again, the driver is not getting any direct benefit. I know there's this argument about traffic congestion. I know we plead it gone off the record, and that more revenue has been received than they anticipate, which means more traffic is coming in than they anticipated. So I don't know the validity of that argument. But, really, it's not going to the upkeep of any roads. Why isn't it tied to sort of usage of CBD roads? I mean, just like a highway toll is tied to mileage of a highway after a toll booth, after you cross into the CBD, it's usage of the CBD. Why is that not sort of the right way to think about this? Because every other toll is a benefit for that particular use. And that's what I'm saying, that the use is time and space on Manhattan roads, which is a, you know, scarce resource. But, again, the toll is being paid for that, the CBD district, that isn't being tolled on the other roads that drivers have a benefit from. That's what makes this different is that this is a segregated area that, unfairly, the users of it are being taxed on. Thank you. Thank you. Thank you, counsel. Thank you all. We'll take the case under advisement.